UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEYLON WILLIAMS, <br><br>    Plaintiff, <br><br>v. <br><br>DAVID BACHLER, et al., <br><br>    Defendants. | Case No. 16-cv-9222 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Keylon Williams sued the City of Chicago and two Chicago police officers under 28 U.S.C. § 1983. He alleges that Defendant Officers David Bachler and Arturo Villanueva conspired to violate, and did violate, his due process rights by fabricating evidence against him during an August 2011 arrest. Defendants moved for summary judgment on all claims. Plaintiff moved for sanctions against Defendants under Federal Rule of Civil Procedure 11, arguing that they frivolously sought summary judgment when genuine issues of material fact remain that require a trial. For the reasons explained below, this Court partially grants and partially denies Defendants' motion, and denies Plaintiff's motion.

**I.    Background**

The facts come from Defendants' Local Rule 56.1 statement of facts [54] and Plaintiff's statement of additional facts [58].

In August 2011, Bachler and Villanueva pulled over William Coleman's car at an intersection in a police-designated "gang conflict area" in Chicago. [54] ¶¶ 10–12; [58] ¶ 9. Plaintiff sat in the front passenger seat while Coleman drove; both men are African-American. [54] ¶¶ 12–13; [58] ¶¶ 4, 6. Defendant Officers say they stopped the car because neither occupant had a seat belt on, but Plaintiff and Coleman swear they were wearing seatbelts. [58] ¶¶ 5–8.

Villanueva approached the driver's side of the car as Bachler approached the passenger side. [54] ¶¶ 15–16. Bachler testified—both at Plaintiff's subsequent criminal trial and in a deposition for this case—that he saw several small bags of what appeared to be crack cocaine sitting in Plaintiff's open hand, that Plaintiff made no effort to hide the bags, and that Bachler simply reached into the car and took the bags from Plaintiff's hand. [58] ¶¶ 2, 14. Bachler says he then ordered Plaintiff to exit the car, arrested him, searched his pockets, and found a handgun. *Id.* ¶ 14; [54-4] at 21. Villanueva ordered Coleman to exit the car at some point during Bachler's interaction with Plaintiff. [54] ¶ 18.

Plaintiff and Coleman tell a vastly different story. Coleman testified that Plaintiff did not have "any white rocks in a plastic baggie on him in his hand" when Defendant Officers approached the car, and Plaintiff says he did not have any drugs on his body. [58] ¶ 12. Plaintiff also testified that he did not have a gun on his person, which Coleman corroborated. *Id.* ¶ 15. Finally, Coleman said there was no gun in his car. [54-6] at 54.

After finding the drugs and gun (or not), Bachler put Plaintiff in the patrol

2

car. [58] ¶ 18. While Plaintiff sat in the car, the door remained partially open, and he heard someone say either "We got it"[1] or a similar phrase. *Id.* ¶ 19. Plaintiff's testimony, although somewhat muddled, indicates that Plaintiff did not see Defendant Officers recover a gun from the car, and reveals Plaintiff's suspicion that Defendant Officers planted a gun in the car or pretended to recover a gun during this time. *See, e.g.*, [54-3] at 34, 39 ("I don't know where they found the gun or the drugs.") (identifying the type of gun that Bachler purportedly recovered only because Plaintiff later saw the gun at his criminal trial). Defendants "admit that no gun was recovered from Mr. Coleman's vehicle on August 5, 2011." [64] at 6.

Plaintiff was charged with possession of a controlled substance and unlawful use of a weapon by a felon. [54] ¶ 27. At a preliminary hearing about three weeks after Plaintiff's arrest, a judge found probable cause for the charge of unlawful use of a weapon by a felon, but found no probable cause to charge Plaintiff with possessing a controlled substance. *Id.* ¶¶ 32–35. After a criminal bench trial where Bachler and Plaintiff testified, a different judge found Plaintiff guilty of violating Illinois' Armed Habitual Criminal statute, 720 ILCS 5/24-1.7(a). *Id.* ¶¶ 39–42.

On direct appeal, the Illinois Appellate Court reversed Plaintiff's conviction. [58] ¶ 1. Despite the trial court's verdict and despite not hearing any of the trial testimony live itself, the Appellate Court found Bachler's trial testimony about recovering drugs from Plaintiff's open hand "too implausible to believe," which cast "grave doubt over the reliability of his testimony regarding the subsequent search

---

[1] This hearsay statement qualifies as either a present sense impression or an excited utterance under Federal Rule of Evidence 803.

3

and recovery of the weapon." *Id.* ¶¶ 2–3. Per the Appellate Court, that finding necessitated reversal because "no rational trier of fact could find Bachler's testimony plausible or reliable, thereby creating a reasonable doubt regarding Williams' guilt." *Id.* ¶ 2.

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

III. Analysis

A. Defendants' Motion for Summary Judgment

1. Count I: Due Process Violation

Count I alleges that Bachler and Villanueva violated Plaintiff's due process rights in two ways: by fabricating evidence that Plaintiff had illegal drugs and a gun, and by failing to comply with their *Brady* obligation to turn over exculpatory evidence to prosecutors. [25] ¶¶ 55–59. Defendants argue that the first portion of the claim fails because Plaintiff has no evidence that Bachler or Villanueva fabricated the drugs or the gun and Defendant Officers have immunity for their trial testimony. [55] at 6–8. Defendants argue that the *Brady* claim fails because Plaintiff "knew from the beginning that Defendant Officers allegedly fabricated evidence and lied about their actions." *Id.* at 9.

*a) Fabricated Evidence*

The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence" later deprives the defendant of liberty in some way. *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)). Convictions premised on deliberately falsified evidence "always" violate a defendant's due process rights. *Id.*

Defendants moved for summary judgment because, in their words, "there is no evidence that any police officer knowingly fabricated evidence against Plaintiff given that it is *undisputed* that a gun was recovered from the vehicle in which

5

Plaintiff was a passenger."[2] [55] at 6 (emphasis added). But that fact could hardly be *more* disputed, and this Court cannot understand why Defendants found it appropriate to apply the term "undisputed" here. At least four pieces of evidence dispute Defendants' contention that officers recovered a gun from Coleman's car: (1) Plaintiff's testimony stating: "I don't know where they found the gun or the drugs," [54-3] at 39; (2) Coleman's testimony that there was no gun in his car, [54-6] at 54; (3) Bachler's testimony that he found the gun in Plaintiff's pocket when he searched Plaintiff outside the car, [54-4] at 21; and (4) Defendants' admission that "no gun was recovered from Mr. Coleman's vehicle on August 5, 2011," [64] at 6. Based upon the record, Defendants clearly mischaracterized a crucial fact to this Court, and their attempts now to walk back their "undisputed" assertions about the gun recovery in Coleman's car fall flat. [63] at 5–8. This Court strongly reminds Defendants' counsel of their obligations under Rule 11.

As for the argument that Plaintiff cannot proceed with this claim because Defendant Officers have immunity for any false testimony they gave at trial, [55] at 7–8, that immunity has no bearing here. Plaintiff claims that Defendant Officers violated his rights by fabricating evidence of the gun itself; he does not claim that they violated his rights by corroborating their allegedly fabricated evidence with false testimony at his trial. *See generally* [25]. To the extent that Defendant Officers propose a legal loophole—immunizing themselves from liability for

---

[2] In part, Defendants base their assertion upon a mischaracterization of Plaintiff's deposition, in which he testified about Defendant Officers finding a gun in Coleman's car only in the context of surmising that the car must have been where officers planted the gun (since Plaintiff knew that they did not find a gun on him). *See, e.g.*, [54-3] at 34, 39. Plaintiff gave confusing testimony at times, but he spoke clearly when he said: "I don't know where they found the gun or the drugs." *Id.* at 39.

6

fabricating evidence by testifying to corroborate that false evidence at trial, where they have absolute immunity for their testimony—that squarely conflicts with Seventh Circuit precedent on due-process claims for fabricated evidence. *See Avery*, 847 F.3d at 441; *Ienco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002) ("no absolute testimonial immunity attaches" to officers' actions "outside of trial").

Because genuine issues of material fact remain regarding whether Defendant Officers fabricated evidence that Plaintiff had a gun, this Court denies summary judgment to Defendants on Plaintiff's claim for fabricated evidence.

### b) Brady *Claim*

To succeed on a *Brady* claim, a plaintiff must show that: (1) the government possessed known exculpatory or impeachment evidence favorable to the accused; (2) the government suppressed that evidence, either willfully or inadvertently; and (3) the suppressed evidence prejudiced the accused. *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014). Suppression means: (1) the government failed to disclose the known evidence in time for the plaintiff to use it; and (2) the plaintiff could not have obtained the evidence "through the exercise of reasonable diligence." *Id.*

Plaintiff's *Brady* claim cannot proceed because he fails to point to any exculpatory or impeachment evidence that he did not already know about before his trial, or that he could not have obtained by exercising reasonable diligence. The law allows *Brady* claims premised upon fabricated evidence, but only when the evidence was "suppressed" under the above definition. *Compare id.* (affirming summary judgment against a plaintiff who "knew of the City's alleged misconduct before his

7

trial started" and "tried to suppress all evidence that emanated from it"), *and Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) (affirming summary judgment against a plaintiff who "knew about his [own] relationship, or lack thereof, with Davis" and was "fully capable of challenging" the government's evidence), *with Jimenez v. City of Chicago*, 830 F. Supp. 2d 432, 443 (N.D. Ill. 2011) (finding genuine issues of material fact where the plaintiff "did not know" crucial information about how police improperly interrogated a key witness).

Taking Plaintiff's version of events as true, Plaintiff knew well before his criminal trial that he had neither drugs nor a gun on his person that day, and he knew (or could have learned by asking Coleman) that Coleman did not have a gun in his car. *See* [58] ¶¶ 12, 15. Thus, Plaintiff possessed the information he needed to contradict the prosecution's version of events—indeed, he succeeded in contradicting their story on appeal when the Illinois Appellate Court reversed his conviction. *Id.* ¶ 1. Because Plaintiff fails to identify any undisclosed exculpatory or impeachment evidence not already in his possession before his trial, this Court grants summary judgment to Defendants on Plaintiff's *Brady* claim. *Cf. Jimenez*, 830 F. Supp. 2d at 433 ("Jimenez did not have within his own knowledge significant portions of the material facts concerning the alleged coercion of Tueffel.").

### 2. Count II: Conspiracy

Plaintiff claims that Bachler and Villanueva conspired to deprive him of his due process rights. [25] ¶¶ 60–63. Defendants argue that Plaintiff fails to provide evidence of any agreement among the officers to violate his rights. [55] at 10–11.

To succeed on a § 1983 conspiracy claim, Plaintiff must show that: (1) the officers reached an agreement to deprive him of his constitutional rights; and (2) overt acts in furtherance of the conspiracy actually deprived him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Given the clandestine nature of conspiracies, Plaintiff may rely upon circumstantial evidence of a conspiracy. *Id.* (citing *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013)). He may not, however, rely upon purely speculative evidence. *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).

Here, Plaintiff cannot survive summary judgment on this claim because he offers only speculation. His conspiracy claim hinges upon two things: (1) he and Coleman testified that they had seatbelts on when Bachler and Villanueva stopped them for not wearing seatbelts; and (2) Plaintiff heard an unknown officer say, "We got it" while standing near Coleman's car, which he took to mean that the officer successfully planted a gun. [56] at 12. Without anything substantiating an unlawful agreement among the officers, that evidence alone cannot establish a conspiracy. *See Seniff*, 342 F.3d at 785 (explaining that evidence of numerous phone calls between alleged conspirators "merely proves that the individuals remained in contact" and offers nothing more than speculation) (internal quotation marks omitted).

Plaintiff claims that Bachler and Villanueva must have conspired to plant evidence because they stopped Coleman's car for pretextual reasons. [56] at 12. But even if Plaintiff and Coleman actually had their seatbelts on, the record fails to

9

show a civil rights conspiracy where the traffic stop remains consistent with numerous non-conspiratorial scenarios, including a traffic stop without any preconceived agreement, sloppy police work, or even a legitimate (but legally insufficient) belief that Coleman's car actually contained evidence of criminal activity. And the "we got it" remark could mean so many different things that it renders Plaintiff's conspiracy theory purely speculative. Rule 56 mandates granting summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Thus, this Court grants summary judgment to Defendants on Count II.

### 3. Count III: Indemnification

Plaintiff's indemnity claim against the City remains viable because the individual officers remain potentially liable on Count I. *See Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 881 (7th Cir. 2012) (citing 745 ILCS 10/2-109). Thus, this Court denies summary judgment to Defendants on Count III.

### B. Plaintiff's Motion for Sanctions

As this Court explained above, the record shows that Defendants mischaracterized a material fact—that officers found a gun in Coleman's car—as undisputed, and then moved for summary judgment on that basis despite admitting that officers never found a gun in the car. This Court sympathizes with Plaintiff's request for Rule 11 sanctions, but denies the motion because Plaintiff has not provided any evidence establishing that he complied with the safe-harbor provisions

of Rule 11(c)(2) before presenting his motion to this Court. *See N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 882 (7th Cir. 2017) (reversing an award of sanctions because the moving party failed to fully comply with Rule 11(c)(2)'s safe-harbor requirement, and suggesting that only strict compliance should suffice).

## IV.    Conclusion

This Court partially grants and partially denies Defendants' motion for summary judgment [53]. This Court grants the motion as to Count II and the *Brady* portion of Count I, but denies it as to Count III and the fabricated-evidence portion of Count I. This Court denies Plaintiff's motion for sanctions [59]. The motion hearing set for August 2, 2018 at 9:45 a.m. in Courtroom 1203 stands, but as a status hearing. All other dates and deadlines stand.

Dated: June 18, 2018

Entered:

*[signature]*

John Robert Blakey
United States District Judge